MILLS PATTERSON *vs.* PENOBSCOT LOG DRIVING COMPANY.

Penobscot.   Opinion February 13, 1880.

*Penobscot Log Driving Company, — Construction of Charter.   Negligence.*
*Agents.*

Where the charter of a log driving company provides, that the company is "under no obligation to drive any logs coming into the Chesuncook lake at any other point than from the main west branch unless seasonably delivered to it at the head or outlet of said lake," the seasonable delivery of logs thus situated at the head or outlet of that lake, is made a condition precedent to any obligation on the part of the company to drive them.   When seasonably delivered, the company would be bound to drive them, wherever its main drive might be.   If, however, the main drive was started at the proper time with reference to success in getting it into the boom, as well as in reference to the interests of those having logs above, intending to have them driven, a delivery after such starting would not be in season.

Where the charter of a log driving company provides that the logs shall be driven at as early a period as practicable, the proper time for starting is left to be decided by those having the drive in charge, and in this respect the duty of the company is performed by hiring men of reasonable skill, who, in forming their judgment, shall exercise such skill in good faith, and execute it with reasonable diligence.

ON REPORT.

An action on the case to recover damages of the defendant corporation, for carelessly and negligently preventing the plaintiff from seasonably delivering 1,500,000 feet of logs, cut and hauled by him in the winter of 1876–7, on landings near Caribou lake, at the head or outlet of Chesuncook lake; and for leaving the Chesuncook lake with their main drive, before the plaintiff could make a seasonable delivery of his logs into such lake, in consequence of which the plaintiff's logs were delayed one year in reaching market, and thereby greatly depreciated in value.

The writ was dated July 18, 1877.

After the testimony for the plaintiff was presented, the case was reported to the full court with the agreement that if the action could be sustained, it was to stand for trial; otherwise, plaintiff nonsuit.

A copy of defendant's charter may be seen in the report of the preceding case of *Weymouth* v. *same defendants.*

The facts appear in the opinion.

*Wm. H. McCrillis* and *John Varney,* for the plaintiff.

*A. W. Paine,* for the defendant.

DANFORTH, J.   The defendant, under its charter, as amended by the act of March 21, 1864, is "under no obligation to drive any logs coming into the Chesuncook lake, at any other point than from the main west branch, unless seasonably delivered to it at the head or outlet of said lake."

It appears that in May, 1877, the plaintiff was then owner of logs answering the description referred to in the act, and for the failure of the defendant to drive them, he claims damage.   The writ contains no allegation of the seasonable delivery of the logs. On the other hand, it appears both by the allegations in the writ, as well as by the evidence in the case, that they were not so delivered.   There was then no performance of the condition to be performed by the plaintiff to entitle him to have his logs driven.   Seasonable delivery, is expressly made a condition precedent to the defendant's obligation, and until that is done, there is no provision of the charter which imposes any obligation upon the company in reference to logs situated as these were.

But while this common principle of law is conceded, it is claimed that this case is not within its operation by means of the wrongful act of the defendant.   The allegation in the writ upon which the claim for damages rests, in substance is, that the plaintiff had his logs on their passage, and in a condition, with the means he had provided, to be seasonably delivered, which the defendant well knew, yet "did carelessly and negligently prevent the plaintiff from so seasonably delivering his said logs to defendant, and have them driven with the west branch drive, by leaving said Chesuncook lake with its main drive, . . . before plaintiff could make such seasonable delivery of his logs into said lake, as he was able and intending to do, so that they might be driven to market."

There is no pretence that any interference on the part of the defendant with the plaintiff's logs caused the delay in the delivery,

but simply that there was not sufficient delay in starting the "main drive," from the foot of the lake.

There appears to be no provision in the charter to prevent the company starting its main drive at any time those in charge of it may deem proper.   On the other hand it is required to drive the logs "at as early a period as practicable."   The starting of the drive does not interfere with the plaintiff's delivering his logs at the place specified, and if so delivered seasonably, the defendant by the terms of its charter would be bound to drive them wherever its "main drive" might be.   If it had left before the proper time and was thus put to an additional expense in driving logs afterwards, but seasonably delivered, itself must bear the loss.   The log owner having complied with the precedent condition, is entitled to have his logs driven.

It is, however, assumed that the defendant, after leaving with the main drive, would decline to receive logs subsequently delivered, whether seasonably, or otherwise, and therefore, the plaintiff was not bound to do a work entirely useless.   But we cannot assume that any party will be guilty of a violation of a legal duty, without proof, and in this case, there is no evidence to show that such a delivery would have been unavailing.

It may however, be and probably is, true, that from some knowledge, peculiar to men engaged in lumbering on that river, the plaintiff knew that after the main drive had started, the defendant would refuse to take his logs, and a delivery of them at the place required, would be useless, and place them as claimed, in greater danger of loss.   It is difficult to perceive how this could change the plain provisions of the charter, and if it could, the plaintiff must fail upon the facts.

There is no evidence of a waiver of delivery, either as to time, or place.   The defendant's agents, declined to make any promises of or give the plaintiff any encouragement that he might expect a delay, or that his logs would be taken at any other place than that specified in the charter.

Nor is there any evidence to authorize the conclusion that the logs would have been delivered at any specified time.   They had been delayed by ice, head winds, and to some extent, by want

of water.   Their future progress must largely depend upon the
same contingencies, and what the result might be, human sagacity
was not sufficient to foretell; and if the seasonable delivery were
prevented by these contingencies, the log owner,. and not the
company, must be the sufferer.   It is, then, uncertain at the
least, whether the failure of delivery was not caused by adverse
circumstances, over which the company had no control, and for
which it was in no degree, responsible, rather than from the too
early starting of the main drive.

There is also an entire lack of evidence to show that the
starting of the main drive was too early.

The allegation is, that this starting before the arrival of the
plaintiff's logs, was careless and negligent.   The burden of
proof is upon the plaintiff, and the only evidence upon this
point is that the main drive did start before the arrival of the
plaintiff's logs.   Still it might not have been before the law
required it.   The charter says the logs shall be driven "at as
early a period as practicable."   There is no proof that the "main
drive" was started before it was practicable to run it through to
its destination, or that it encountered any obstacle in its progress,
which would have been avoided by a later start.

But if the phrase "as early a period as practicable" refers as
well to the practicability of getting the logs to the starting point,
as to driving them below, the result is not changed.   It cannot
refer exclusively, to collecting the logs, but must as well refer to
success in driving them down the river.   The defendant would
not be justified in hazarding a failure to get a large quantity of
logs to market by delaying the starting beyond the period dictated
by the exercise of reasonable skill and prudence, for the uncer-
tain, or even certain, arrival of a much smaller quantity.   The
duty of defendant is owing not to one alone, but to all the log
owners interested in the drive, and must be discharged with
reference to the interests of all.   The delivery of the logs, in
order to be seasonable, must be so in reference to the require-
ments and hazards of driving the logs below.   If not in season
for success in driving, the delivery would clearly be unavailing.
What that period is, must depend upon that state of things which
is caused by the weather, and must vary with the varying seasons.

Hence, the charter has left it indefinite, and to be decided by the judgment of the men in charge. In this respect, the duty of the defendant is performed by placing men in charge, who by their capacity and experience in such matters, are competent for the purpose, and in the exercise of their employment, act in good faith, using reasonable skill and prudence in the formation of their judgment and diligence in executing it. The plaintiff, recognizing this principle of law, alleges as the foundation of his action, negligence in the defendant, in not waiting for his logs. This negligence can only be shown, by evidence of a failure in the competence, skill, or good faith of its servants, and none is found which tends to sustain such a charge. No negligence in the exercise of the required judgment is shown, nor does it appear, even by the light of subsequent developments, that the drive was not delayed to the latest period consistent with safety.

The plaintiff's failure to have his logs driven, appears to have been caused by adverse winds, ice, and want of water, rather than by any negligence on the part of the defendant.

*Plaintiff nonsuit.*

APPLETON, C. J., BARROWS, PETERS and SYMONDS, JJ., concurred.